UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGINALD BUDDY RINGGOLD III, | No. C 10-1531 MHP |
| Plaintiff, | |
| v. | **MEMORANDUM & ORDER** |
| FREEDOM FINANCIAL NETWORK LLC, doing business as FREEDOM DEBT RELIEF LLC, | **Re: Defendant's Motion to Dismiss** |
| Defendant. / | |

Plaintiff Reginald Ringgold, III, brought this action against Freedom Financial Network LLC, ("Freedom") alleging employment discrimination. Now before the court is Freedom's motion to dismiss Ringgold's second amended complaint for failure to state a claim. This motion is suitable for decision without oral argument. Civil L.R. 7-1(b). Having considered the parties' submissions, the court enters the following memorandum and order.

BACKGROUND

In August 2009, Ringgold was hired by Freedom as an account executive. In late February 2010, Ringgold provided Freedom with a set of affidavits and other documents claiming that he was not required to pay income or employment taxes, and requesting that Freedom stop withholding taxes from his wages. Docket No. 20 (Second Amended Complaint ("SAC")) ¶¶ 10-11; Docket No. 22 (Motion), Exh. A (Affidavits).

Ringgold did not provide these documents to the court. Under the incorporation by reference doctrine, "a document . . . may be incorporated by reference into a complaint if the plaintiff refers

extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id.* Freedom provides numerous documents as exhibits A-D to its motion. These documents set forth the basis for Ringgold's claim, are referenced in his second amended complaint, and Ringgold does not dispute their authenticity. Consequently, they may all be considered at this stage under the incorporation by reference doctrine.

In these documents, Ringgold claimed that he was "an American National domiciled outside of the statutory but not constitutional 'United States,'" and that he was a "'foreign person' because [he] was born in the country but [does] not have a domicile on federal territory." Affidavits at 1. Therefore, Ringgold claimed he had no tax liability and withholding was not required. *Id.* at 1-2.

After receiving this information, Freedom met with Ringgold. SAC ¶ 12. At the conclusion of this meeting Freedom requested that Ringgold resubmit documentation establishing his authorization to work in the United States, and in the interim suspended his employment. SAC ¶ 13. In response to Freedom's request, Ringgold provided a new I-9 Employment Eligibility Verification Form, a copy of his social security card and drivers license, as well as a copy of his birth certificate documenting that he was born in Groton, Connecticut. *Id.*; Motion, Exh. B (I-9 Documents). However, on his revised I-9 form, Ringgold checked the box labeled "noncitizen national of the United States." I-9 Documents at 1. Thereafter, Ringgold's employment was terminated. SAC ¶ 16.

On March 25, 2010, Ringgold filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that he was terminated because of his religion, national origin, and in retaliation for engaging in protected activity. Motion, Exh. C (EEOC Charge) at 2. On April 5, 2010, the EEOC dismissed Ringgold's charge because he failed to state a claim. *Id.*, Exh. D (EEOC Dismissal). The instant action followed.

Ringgold filed a first amended complaint and also a second amended complaint prior to the filing of a responsive pleading. Thereafter, Freedom filed the instant motion to dismiss. After Freedom filed the motion, Ringgold filed a third amended complaint. Ringgold, however, had already filed two amended complaints prior to Freedom's motion to dismiss, and had therefore exhausted his ability to amend the second amended complaint as a matter of course. *See* Fed. R. Civ. P 15 ("A party may amend its pleading as a matter of course within (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service or of a responsive pleading or 21 days after service of a motion under rule 12(b),(e) or (f), whichever is earlier. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."). Ringgold did not seek Freedom's written consent or the court's leave prior to filing his third amended complaint; consequently, his second amended complaint is the operative complaint in this action.

LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief can be granted against that defendant. A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal may be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988). A motion to dismiss should be granted if a plaintiff fails to pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, ___U.S.___,___, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556).

Allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). "[A] court

3

may take judicial notice of 'matters of public record'" and may also consider "[d]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) (quoting *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)). The court need not, however, accept as true pleadings that are no more than legal conclusions or the "formulaic recitation of the elements" of a cause of action. *Iqbal*, 129 S. Ct. at 1950. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

DISCUSSION

As a threshold matter, the court notes that Ringgold's opposition to Freedom's motion to dismiss is conclusory and riddled with inapposite discussion. *See* Docket No. 32 (Opposition). Moreover, in contravention to the civil local rules, it is 61 pages long. Consequently, Ringgold's opposition can be stricken, and Freedom's motion can be granted, on this basis alone. Since Ringgold is *pro se*, the court nonetheless addresses Freedom's motion on the merits. Ringgold's second amended complaint alleges his termination from Freedom amounts to discrimination based on national origin and religion. Neither ground is supported by the facts as alleged in the second amended complaint or the documents incorporated therein.

Title VII of the Civil Rights Act of 1964 makes it an unlawful for an employer "to limit, segregate, or classify [its] employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "A plaintiff bringing a civil action for a violation of . . . 42 U.S.C. [section] 2000e-2(a), has the initial burden of establishing a prima facie case that his employer discriminated against him on account of his race, color, religion, sex, or national origin. A plaintiff meets this initial burden by offering evidence adequate to create an inference that he was denied an

4

employment opportunity on the basis of a discriminatory criterion enumerated in Title VII." *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984).

Ringgold avers that he was terminated because he is an aboriginal indigenous Free Moorish American National and a Muslim. SAC ¶¶ 8-9, 11-16. If an employer does not know that an employee is a member of a protected class, a prima facie case of disparate treatment cannot be made. *See e.g.*, *Nieves v. Met. Dade County*, 598 F. Supp. 955, 962 (S.D. Fla. 1984) (plaintiff could not establish a prima facie case for discrimination based on national origin where he never notified the defendants that he was Hispanic); *Miller v. Mercy Hosp. Inc.*, 720 F.2d 356 (4th Cir. 1983) (trial court clearly erred by concluding that plaintiff suffered employment discrimination where the person making employment decisions was unaware of plaintiff's race). The basis for Ringgold's claims arises from a series of events in February 2010. In late-February 2010, Ringgold provided documents to Freedom that he alleges informed Freedom of his identity as an aboriginal indigenous Free Moorish American National and a Muslim. SAC ¶ 11. These documents, however, do not contain any references to either Ringgold's identity as an aboriginal indigenous Free Moorish American National or as a Muslim. Accordingly, Ringgold has not alleged facts sufficient to establish that he has a plausible claim of employment discrimination for which relief can be granted.

Moreover, many of the incorporated documents call into question whether Ringgold has authorization to work in the United States, a threshold matter that Freedom has a legal obligation to verify. In the materials Ringgold provided to Freedom, Ringgold claimed that he was a sovereign entity unto himself and therefore was not required to pay any taxes. *See generally* Affidavits. Specifically, Ringgold stated that he was "an American National domiciled outside of the statutory but not constitutional 'United States'" and that he was a "nonresident alien per 26 U.S.C. section 7701(b)(1)(B)" but not an "alien per 26 U.S.C. section 7701(b)(1)(A)." *Id.* at 1. Ringgold also claimed that he had "abandoned all aid and protection of man-made government and became a 'stateless person' pursuant to *Newman-Green v. Alfonso Larrain*, 490 U.S. 826 (1998)." *Id.* at 57. Once Ringgold's employment authorization came into question, Freedom was obligated under the Immigration Reform and Control Act of 1986 ("IRCA"), 8 U.S.C. § 1324a, to verify Ringgold's

1 eligibility to be employed in the United States. *Id.* § 1342a(a)(2) (it is unlawful for an employer "to
2 continue to employ [an] alien in the United States knowing the alien is (or has become) an
3 unauthorized alien with respect to such employment."). Freedom's attempts to verify Ringgold's
4 employment status, through a request for further evidence, were therefore within its statutory
5 obligations. Thus, Ringgold's complaint and incorporated documents demonstrate, on their face,
6 that Freedom's termination of Ringgold was for a legitimate, non-discriminatory reason. Even
7 though the bare allegations of discrimination are rebutted by Ringgold's complaint and incorporated
8 documents, Ringgold does not allege any further facts that bear upon the ultimate question of
9 discrimination.

10 Ringgold contends that the IRCA requires Freedom to accept, at face value, whichever form
11 of documentation that he chose to provide to verify his employment eligibility, and therefore
12 Freedom was not permitted to seek additional materials. This obligation, however, only applies
13 where the documents appear reasonable on their face. 8 U.S.C. § 1324a(b)(1)(A). While Ringgold's
14 Connecticut birth certificate would have established that Ringgold was a United States citizen under
15 ordinary circumstances, this conclusion conflicted with Ringgold's statement on his revised I-9 form
16 that he was a non-citizen national of the United States. This inconsistency was sufficient to call into
17 question the reasonableness of the documents Ringgold provided to Freedom. Ringgold's own
18 allegations establish that he was suspended and then later terminated because Freedom was unable to
19 determine whether he was authorized to be employed in the United States. These allegations are
20 insufficient to plausibly plead a claim for employment discrimination based on national origin.

21 Finally, with respect to his religious discrimination claim, other than legal conclusions,
22 Ringgold sets forth no supporting facts in his second amended complaint.

23 This decision is not incompatible with *Haines v. Kerner*, 404 U.S. 519 (1972), as Ringgold
24 suggests. In *Haines*, the United States Supreme Court held that a Illinois state prisoner's claim
25 should not be dismissed unless "it appears beyond a shadow of a doubt that the plaintiff can prove
26 no set of facts in support of his claim which would entitle him to relief." *Id.* at 520. This is not the
27
28

6

standard in a civil employment discrimination action. *See Twombly*, 550 U.S. at 562 (setting forth plausibility standard); *Iqbal*, 129 S. Ct. at 1944 (extending plausibility standard).

In sum, Ringgold's second amended complaint is dismissed. Leave to amend is not automatic whenever a plaintiff loses a Rule 12 motion. To justify the request to amend, plaintiff must explain what he can add to the complaint to overcome the fatal obstacles that exist. Otherwise, granting leave to amend amounts to a pure delay in the final disposition of the case. *In re Daou Systems*, 411 F.3d 1006, 1013 (9th Cir. 2005) (complaint may be dismissed with prejudice if it is clear that it cannot be saved by amendment); *Bloom v. Martin*, 77 F.3d 318, 321 (9th Cir. 1996) ("Dismissing a complaint without leave to amend is appropriate when granting leave would serve no purpose because the acts complained of cannot constitute a claim for relief."); *Bell v. City of Kellogg*, 922 F.2d 1418, 1425 (9th Cir. 1991) (dismissal with prejudice is proper if amendment "would be futile in saving the plaintiff's case"). Here, Ringgold has not identified any facts or claims, in either his third amended complaint or his opposition, that he could plead in an amended complaint to overcome the noted fatal defects.

CONCLUSION

For the reasons state above, Freedom's motion to dismiss is GRANTED with prejudice. Ringgold's motion to compel discovery, Docket No. 31, and Freedom's motion to strike, Docket No. 35, are both DENIED as moot. The clerk of the court shall close the file.

IT IS SO ORDERED.

Dated: August 13, 2010

MARILYN HALL PATEL
United States District Court Judge
Northern District of California